1  **JOE HILL**
   **HILL LAW OFFICES**
2  P.O. Box 500917
   Saipan, MP 96950
3  Tel.: (670) 234-6806/7743
   Fax:  (670) 234-7753
4
   Attorney for Plaintiffs-Intervenors
5
                    **UNITED STATES DISTRICT COURT**
6                              **FOR THE**
                    **NORTHERN MARIANA ISLANDS**
7

8  **U.S.   EQUAL   EMPLOYMENT**
   **OPPORTUNITY  COMMISSION,**
9
                    Plaintiff,
10                                           **Case No. CV 07-0029**

11          **v.**

12 **L & T   I N T E R N A T I O N A L**      **COMPLAINT-IN-INTERVENTION**
   **CORPORATION, L&T GROUP OF**               **OF PLAINTIFFS-INTERVENORS**
   **C O M P A N I E S ,   L T D . ,   T A N**
13 **HOLDINGS CORPORATION, TAN**
   **H O L D I N G S   O V E R S E A S**
14 **INCORPORATED,   CONCORDE**                **DEMAND FOR JURY TRIAL**
   **GARMENT   MANUFACTURING**
15 **CORPORATION,  and  DOES  1-5,**
   **Inclusive,**
16
                    Defendants.
17

18 **1.  ABELLANOSA, JOANNA**
   **2.  ALVARADO, MARISSA**
19 **3.  ANTATICO, NORA**
   **4.  APIT, LOLY**
20 **5.  AQUINO, RUSSEL**
   **6.  ARANDA, MARLOU**
21 **7.  ARCEGA, PRECILLA**
   **8.  ASIA, ANGELITA**
22 **9.  BAAY, CRISTINA**

JOE HILL
Attorney at Law
Hill Law Offices ~ Susupe
P.O. Box 500917 ~ Saipan MP 96950 ~
TEL: (670) 234-6806/7743 ~ FAX: (670) 234-7753

10.  BALBIDO, MARISSA
11.  BALCITA, AMALIA
12. BALICHA, ESTELITA, E.
13. BANAAG, EVELYN
14. BANGUILAN, TERESITA
15.  BANTILLO, DELMA
16.  BASTO, ZENAIDA
17.  BAUTISTA, CONSOLITA
18.  BERNARDINO, EVA
19.   BUTIC, TERESITA
20.  CABANIT, ANASTACIA
21.  CAPACITE, EMERITA
22.  CARAIT, RUBY
23.  CAVA, MARITA
24.  CHAVEZ, EVANGELINE
25.  CONCEPCION, ANDREA
26.  CONTEMPLACION, NELIDA
27.  CORREA, HAIDE
28.  CRUZ, HELEN
29.  CRUZ, AGNES
30.  DELA CRUZ, MA. ROSARIO
31.  DELOS SANTOS, ELENA
32.  DOMINE, CORAZON
33.  DUGAY NOMIELADA
34.   FAJARDA, AMELITA
35.  GADIANE, MARILYN
36.  GASES, NENITA
37.  GELERA, EIREEN
38.  GONZALES, GUADALUPE
39.  HERNANDEZ, WENDELINE
40.  INOPIQUEZ, ROSALINDA
41.  LADIA, VICTORIA
42.  LEJANO, ANGELA
43.  LOZANO, NELIA
44.  MACLANG, MARIDETH
45.  MAGNAYE BEATRIZ
46.  MANZANILLA, EDELITA
47.  MATEO, MARLA
48.  MENDOZA, BELINDA
49.  MIRANDA, AMALIA
50.  MOLINA, ELIZABETH

1    **51. MONSALUD, EVA**
    **52. NABOR, CELESTINA**
2    **53. NAVIDA, MARICHU**
    **54. NIMO, EULALIA**
3    **55. NIPAYA, LEONILA**
    **56. NISPEROS, JENITA**
4    **57. NUEVA, MARITES**
    **58. OLERMO, RUBY**
5    **59. PANGAN, MARITA**
    **60. PANGELINAN, TERESITA**
6    **61. PASCUA, DYNA**
    **62. PASCUAL, MYRNA**
7    **63. PELIGRINO, ADORACION**
    **64. PERFECTO, CHARITO**
8    **65. POMAREJOS, GLORIA**
    **66. QUIPOT, MERCIA**
9    **67. RELEVANTE, ADORA MAE**
    **68. REYES, AMELIA**
10   **69. SALVADOR, JANNA**
    **70. SAPIANDANTE, MILA**
11   **71. SORIANO, MARIETTA**
    **72. TAPIADOR, TERESA**
12   **73. TEBERIO, JESSICA**
    **74. TOBIAS, JOCELYN**
13   **75. VALDOZ, SHEROWIN**
    **76. VILLANUEVA, MARIBEL,**

14            Plaintiffs-Intervenors,

15               **v.**

16   **L&T INTERNATIONAL**
17   **CORPORATION, L&T GROUP OF**
    **COMPANIES, LTD., TAN**
18   **HOLDINGS CORPORATION, TAN**
    **HOLDINGS OVERSEAS**
19   **INCORPORATED, CONCORDE**
    **GARMENT MANUFACTURING**
20   **CORPORATION, and DOES 1-5,**

21            Defendants.

22              Page 3

**NOW COME** Plaintiffs-Intervenors, Abellanosa et al.,[1/] ("Intervenors"), by and through counsel, and as their claims and causes of action against Defendants allege and aver as follows:

# I.
## NATURE OF THE ACTION

1.  This is a civil rights action to redress the deprivation of rights accorded to Intervenors pursuant to the Civil Rights Act of 1964, 42 U.S.C. § 2000e <u>et seq.</u>**,** and the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.  The Intervenors are former employees of Defendants. Defendants, inter alia, unlawfully discriminated against Intervenors, terminated their employment, unlawfully segregated them and provided them with fewer overtime hours than Defendants' Chinese employees, by segregating Intervenors and denying health benefits to Intervenors, because of and based on Intervenors' national origin, Filipino.

3.  Defendants' said employment practices and actions were willful and intentional and Intervenors bring this suit seeking, inter alia, declaratory relief, lost earnings, wages, compensatory and punitive damages and other appropriate

---

[1/] The seventy-six (76) Intervenors are named and listed individually in Appendix "A" hereto which is hereby incorporated by this reference as though fully set forth herein.

equitable and legal relief as may be deemed necessary and proper to compensate Intervenors.

## II.
## PROCEDURAL REQUIREMENTS

4. Each Intervenor duly and timely filed charges of discrimination with the Equal Employment Opportunity Commission (EEOC), thereby satisfying the requirements of 42 U.S.C. §2000e-5(b)(e). Said charges were filed within one hundred and eighty (180) days of Defendants' unlawful employment practices. All conditions precedent to bringing and filing this action have been met.

5. On or about August 28, 2006, the EEOC, after investigation, issued a Determination with respect to the charges against Defendants. The EEOC "determined that Respondent discharged Charging Party and a class of non-Chinese employees . . . because of their national origin." A representative copy of the Determination (Abellanosa's) is attached as **Exhibit "1"** hereto.

6. Following the Determination referenced above, the EEOC attempted to eliminate the unlawful employment practices by informal methods of conference, conciliation and persuasion pursuant to 42 U.S.C. 2000e-5(b), but it was unable to secure a conciliation agreement.

7. On September 12, 2007, the EEOC filed a Complaint with this Court

against Defendants alleging, inter alia, that Defendants "unlawfully discriminated against them and terminated the employment of the Charging Parties because of their national origin, Filipino . . ." and further "unlawfully discriminated against the Charging Parties by segregating them by their national origin and providing them with fewer overtime hours than Chinese employees."

8.  The Intervenors seek to intervene in the proceedings commenced by the EEOC, pursuant to Section 706(f)(1) and (3) of Title VII, 42 U.S.C. §2000e-5(f)(1) and (3) and Rule 24 of the Federal Rules of Civil Procedure.

### III.
### JURISDICTION AND VENUE

9.  Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337,  1343(3) and 1343(4), which confer original jurisdiction upon this Court in a civil action to recover damages or to secure equitable relief under any act of Congress providing for the protection of civil rights.

10. Jurisdiction is also conferred upon this Court pursuant to Section 706(1) and (3) and 707 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f)(1) and (3), and -6, and Section 102 of Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

Page 6

11. This action is also brought under the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq., (hereinafter designated as "FLSA") made applicable to this action by the COVENANT TO ESTABLISH A COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS IN POLITICAL UNION WITH THE UNITED STATES OF AMERICA, Article V, § 502(a). Jurisdiction is conferred upon this Court pursuant to Section 16(b) of the FLSA, 29 U.S.C. Section 216(b).

12. The Court is granted jurisdiction over Intervenors' FLSA claims under 28 U.S.C. § 1331 (federal question jurisdiction), and as proceedings arising under an Act of Congress regulating commerce pursuant to 28 U.S.C. § 1337(a).

13. The Court has jurisdiction over Intervenors' wage claims pursuant to 29 U.S.C. § 216(b) and Section 207(a) as amended.

14. The Court's authority to issue declaratory relief in this action is conferred by 28 U.S.C. § 2201 and 2202.

15. The Court's jurisdiction over Intervenors' state law claims is granted pursuant to 28 U.S.C. § 1367(a) (supplemental jurisdiction).

16. Venue is properly placed in this United States District Court for the Commonwealth of Northern Mariana Islands (CNMI) in that at pertinent times, the parties were present and resided in, and the substantive acts alleged herein

1  occurred in the CNMI.

2                              **IV.**
3                      **PARTIES AND CAPACITIES**

4          17.  Plaintiff  Equal Employment Opportunity Commission ("EEOC") is

5  a federal agency created pursuant to Section 705 of the Civil Rights Act of 1964,

6  42 U.S.C. § 2000e-4.  The EEOC is authorized to bring this action pursuant to 42

7  U.S.C. § 2000e-5(f)(1).

8          18. Intervenors  are, each and all, citizens of the Philippines and, at all
9
   relevant times, resided in the CNMI and were employed by or suffered to work by
10
   Defendants variously pursuant to contracts partly in writing and partly oral,  for
11
   a fixed period of employment of one (1) year to two (2) years each,  pursuant to
12
13 the Nonresident Workers Act (NWA), 3 N.Mar.I.Code § 4411, *et. seq.*

14         19. Intervenors, at all pertinent times, were employed and worked as

15 "packager hand" of garments by and for Defendants in an enterprise engaged in

16 commerce and the production of goods for interstate and international commerce,

17
   such that garments worked on and made by Intervenors were shipped by
18
   Defendants in interstate and international commerce from the CNMI to various
19
20 places in the United States of America and other countries.

21         20. Each of the Intervenors was hired by and commenced work as

22                              Page 8

"packager hand" for Defendants on different dates in February 2004 and March 2004 and they were terminated by Defendants on or about May 12, 2004.

21. Defendant L&T International Corporation, at all pertinent times, was a domestic CNMI corporation with its head office and factory located in Saipan, CNMI, whose primary business was the production of garments for interstate and international trade and distribution and sale outside of the CNMI and was and is engaged in the business of production of goods for and shipment in, interstate and international commerce and plaintiffs-intervenors performed work on said products and garments.

22. At all relevant times, Defendant L&T International Corporation was a CNMI corporation doing business in the CNMI and was continuously an employer of Intervenors and had at least fifteen (15) employees at all pertinent times. And at all relevant times, said Defendant L&T was continuously an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

23. At all pertinent times, Defendant L&T Group of Companies, Ltd., was a CNMI corporation doing business in the CNMI and continuously employed at least fifteen (15) employees at all pertinent times. And at all pertinent

times, Defendant L&T Group of Companies Ltd., was an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

24.  At all pertinent times,  Defendant Tan Holdings Corporation was a CNMI corporation doing business in the CNMI and continuously employed at least fifteen (15) employees at all pertinent times.  And at all relevant times, Defendant Tan Holdings Corporation was an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

25.  At all pertinent times,  Defendant Tan Holdings Overseas Incorporated, on information and belief, was a CNMI corporation doing business in the CNMI and continuously employed at least fifteen (15) employees at all pertinent times.  And at all relevant times, Defendant Tan Holdings Overseas Incorporated was an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

26.  At all pertinent times, Defendant  Concorde Garment Manufacturing Corporation was a CNMI corporation doing business  in  the  CNMI  and

continuously employed at least fifteen (15) employees at all pertinent times.  And

at all relevant times,  Defendant  Concorde Garment Manufacturing Corporation

was an employer engaged in an industry affecting commerce within the meaning

of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

27.  Intervenors are not aware or sure of the identities, true names and

capacities of Defendants sued as DOES 1 through 5, herein and therefore

Intervenors sue said Defendants by such fictitious names with reservation to

amend the complaint to name said  DOE defendants individually or corporately

as they become known. Intervenors allege that each of the Defendants named as

DOES was in some manner responsible for the acts and omissions alleged herein

and Intervenors will amend their complaint to identify and allege the

responsibility of said Does when ascertained and clearly known.

28.  Additionally, on information and belief, Intervenors allege that said

defendant Does 1-5, are  variously alter egos, joint employers, and/or integrated

enterprises of Defendant L&T International Corporation.

29.  All of the acts and failures to act alleged herein were duly performed

by and attributable to all Defendants, each acting as successor, agent, joint

employer, integrated enterprise, employee and/or under the direction and control

of the other Defendants, except as otherwise specifically alleged. Said acts and failures to act were within the scope of such agency and/or employment, and each Defendant participated in, approved and/or ratified the unlawful acts and omissions by the other Defendants complained of herein. Whenever and wherever reference is made in this Complaint to any act by a Defendant or Defendants, such allegations and reference shall also be deemed to mean the act and failures of each Defendant acting individually, jointly, and/or severally.

30. Defendants were employers of each Intervenor at pertinent times herein, within the meaning of FLSA Section 203(e)(I).

## V.
## FACTUAL BACKGROUND

### A.
### The Recruitment Process

31.    Between January 2004 to March 2004,   Defendants, through newspaper and other media, recruited and advertised for persons to work as "packager hand."

32.  The Intervenors, who either read Defendants' job advertisement(s), learned through the media and/or were informed by others about said job openings, responded and applied for said jobs on various dates during said period.

33.  Defendants, by and through their employees and agents, Ms. Corazon "Cory" Quing, and Nenita "Baby" Lopez,  whose duties included, inter alia, consulting and advising intervenor-employees on personnel matters,  in its Human Resources Department (HRD), interviewed each intervenor-applicant regarding their employment and work experience, among other matters, and required each intervenor-applicant to fill out an application form.

34.  On various dates thereafter, Defendants, variously through Ms. Quing and/or Ms. Baby Lopez, who were employees and agents of L&T in its HRD, contacted each intervenor-applicant and instructed them to come and report to L&T.

35. Upon reporting, as requested, L&T, either through Ms. Lopez or Ms. Quing, informed Intervenors that L&T would hire them and directed each Intervenor  to sign the employment contract form then being presented to them.

**B.**
**DOL Authorizes Intervenors' Transfer**
**and Work with Defendants**

36.  Certain of the Intervenors were authorized to work for Defendants by the Department of Labor's approval of Conditional Grant of Transfers, premised on L&T's promises and representations set forth in the Department of Labor

(DOL) form entitled Declaration of Accepting Employer, executed and signed by Defendants and each of the said-certain Intervenors. Attached as **Exhibit "2"** hereto and incorporated herein by this reference is a list of those twenty-five (25) Intervenors hired by Defendants pursuant to conditional grants of transfer. Attached as **Exhibit "3"** hereto and incorporated herein by this reference, is a copy of the standard  DOL "Conditional Grant of Transfer" form executed by said Intervenors.

37.  At the time Defendants recruited and hired those Intervenors listed in Exhibit "2" under conditional grants of transfer, said Intervenors had the legal right to transfer and to seek and secure other employment for yet an unexpired number of days.

38.  At said time, Intervenors variously were either actively seeking other employment, and/or had pending employment applications with other employers. At the time Defendants promised to hire each said Intervenors, they (workers) variously each had a number of days remaining under their transfer authorization in which to seek other employment. In reasonable reliance on Defendants' promised employment, said Intervenors were caused to give up and forego use of their remaining transfer time  and/or to seek other or more secure employment

in the time remaining under their transfer authorization.

39. Certain of the Intervenors were authorized to work for Defendants by DOL's approval of Consensual Grant of Transfer agreements between the workers, their previous employers and the new employer, Defendants. Attached as **Exhibit "4"** hereto and incorporated herein by this reference is a list of those fifty-one (51) Intervenors hired by Defendants pursuant to consensual grants of transfer.

40. At the time, Defendants recruited and hired those Intervenors listed in Exhibit "4" under consensual grants of transfer, said Intervenors were working and had lawful annual employment contracts with their then existing employers.

41. Defendants, through their agents, knew that Intervenors were so employed and requested that Intervenors quit those jobs and come to work for Defendants.

42. Because of the assurances and representations made by Defendants and their agents, that Intervenors would be hired and given stable, full-time work and employment for at least one year, Intervenors were induced to and reasonably relied on Defendants and their agents' promise of secure employment

for one to two years, in leaving their employer, for work with Defendants.

43.   In entering into an employment relationship with Defendants and in agreeing to forego other employment opportunities and to leave their then secure employment in order to work for Defendants, each of the Intervenors listed in Exhibits "2" and "4" reasonably relied on said representations of Defendants of full time work for not less than one (1) year with the prospect of renewal for an additional year.  In so relying and agreeing Intervenors sought to obtain financial stability, peace of mind, and future employment security with  Defendants.

44.   At all material times, Defendants, through their agents, assured and represented to each Intervenor  that they would be given stable employment and work annually as long as they performed satisfactorily and obeyed all reasonable and lawful directions, rules and regulations of Defendants.

45.   Defendants knew at the time of recruiting/contracting with,  and at the time of termination, that each Intervenor  was female, an alien, and a citizen of the Republic of the Philippines.

46.   Defendants knew that as alien contract workers, each Intervenor's ability and right to remain/reside in the CNMI, was dependent on Intervenors' maintaining and having a DOL approved employment contract and an employer.

Page 16

47.  Defendants knew that if they terminated Intervenor(s) prior to the natural expiration date of their contract(s) that Intervenors would not be able to stay or reside in the CNMI unless they were able to get transfer authorization from DOL and timely obtain another annual contract employer.

48.  Defendants knew or upon reasonable inquiry should have known, at the time of the May 12, 2004 termination, that: (a) the economy and job market in the garment related industry was and had for sometime been, on a down turn; (b) that there were then a surplus and large numbers of unemployed garment-related alien workers listed with the DOL Employment Services unable to be placed by the agency and unable to find work;  (c) that Defendants, on information and belief, prior to termination, made no effort to contact and ask other employers if they could employ any of the plaintiffs; (d) Defendants thus knew or, upon reasonable inquiry, would or should have known that by deliberately choosing to terminate all 76 Intervenors *en masse* and dumping them in the CNMI unemployment pool at one time, that each Intervenor's chance of finding and obtaining new employment in their job category ("packager hand") would be exacerbated and rendered more difficult and unlikely, such that Intervenors have because of Defendants' actions and omissions, been unable to

find or secure other contract employment.

## C.
### Physical Examination and Health Clearance Fees
### Required by Law to be Paid/Provided by Employer

49.  Defendants, by and through their employee and agent, Baby Lopez, required and demanded as a condition to contracting with, hiring, and continuing employment of each Intervenor  with Defendants, that each Intervenor must provide for and/or pay their physical examination and health clearance fees. Implicit in this demand and condition was that Intervenors would not be hired or continued in employment  unless Intervenors  agreed to and provided for or paid for said examination and health fees.

50.  As an inducement for each Intervenor  agreeing to provide or pay for their said first year examination and health clearance fees,  Defendants, by and through their  agents, and Ms. Lopez, promised and represented to each Intervenor that Defendants would pay for each Intervenor's physical examination and health clearance fees, beginning with their second year of employment with Defendants.  Implicit in said representation was that Intervenors would have and would be given employment and work during the first year of their  respective one (1) year contracts and that thereafter Intervenors would be  renewed unless

Intervenors were terminated for good cause.

51.  In committing and making the above described acts, promises, statements, and omissions, Defendants' agents and Ms. Lopez were  acting as agents of Defendants and within the scope of their authority or on the express instruction and direction of Defendants and/or Defendants ratified said acts, conduct and omissions.

52. Defendants made the aforesaid promises and representations through their agents, including Ms. Lopez or ratified the same for the purpose of inducing each Intervenor to accept employment with and to work for Defendants for Defendants' benefit, and to take advantage of each Intervenor's experience, expertise, and labor.

53.  As a result of Defendants' and their agent's representations and promises, each Intervenor was reasonably led to believe, rely on and understand that they would be renewed and employed with Defendants for a minimum of one (1) year and that their contract would be renewed for a second term of one year upon expiration.

54.  Each Intervenor accepted employment with Defendants in reliance upon Defendants' representations and implicit promise that Intervenors would

Page 19

be renewed at the end of their first year contract, if Intervenors' work performance were satisfactory and Intervenors were not terminated for good cause.

55.   Based on said Defendants' and their agents' representations and promises of continued employment and employment renewal, each Intervenor reasonably relied thereon and were led to believe that they would be renewed and employed by Defendants for a minimum of one (1) full year .

56.   Certain of the Intervenors in reliance on said representations and promises of Defendants and their agents, paid for both their physical examination and health clearance fees in reliance on and believing their employment would be for a full year's work.  Attached as **Exhibit  "5"** hereto and incorporated herein by this reference is a list of those Intervenors who paid both their said physical examination and health clearance fees.

57. Certain of the Intervenors, in order to obtain employment with Defendants, and relying on their said representations and promises, paid their own physical examination fees. Attached as **Exhibit "6"** hereto and incorporated herein by this reference is a list of those Intervenors who paid either their physical examination fee or their health clearance fee.

58. Certain of the Intervenors, in order to obtain employment with Defendants were required by Defendants and their agents to use their then yet valid health clearance certificates from their previous employment, in lieu of the employer, Defendants, paying for said cost and fees. Attached as **Exhibit "7"** hereto and incorporated herein by this reference is a list of those Intervenors required by Defendants to so use their own previously obtained health clearance certificates.

59. On information and belief, a majority of the workers employed by Defendants are Chinese nationals and citizens but their contracts and employment were and are not so conditioned on said Chinese workers providing or paying for said physical examination and health certificate fees, as those of the Intervenors. Furthermore, on information and belief, there are no other employees of Defendants whose employments or contracts were and are so conditioned, except for Intervenors who are Filipino nationals and citizens.

60. Defendants and their agents' acts in requiring Intervenors to pay for or shoulder the costs of physical examination and/or health certificates were in violation of CNMI law and the public policy of the Commonwealth.

61. On information and belief, Defendants, as required by the NWA,

executed with the Director of Labor, covering each Intervenor, an Employer's

Non-Resident Worker Agreement, to which each Intervenor is a third-party

beneficiary. Attached as **Exhibit "8"** hereto and incorporated herein by this

reference is a standard form of said Non-Resident Worker Agreement.

62.    Under the said third-party beneficiary agreement, Defendants shall

inter alia, be "[r]esponsible for the repatriation and medical expenses, as well as

all other expenses required by law of any nonresident worker to be employed or

employed under this Agreement until the worker leaves the Commonwealth . . .,"

which includes said physical examination and health clearance fees.

63.    The said third-party beneficiary agreement also requires Defendants

to provide each plaintiff a minimum of forty (40) hours of work per week, at all

times, for the duration of each Intervenor's respective employment contract.

### D.
### Defendants' Restrictive, Oppressive and
### Unconscionable Employment Contracts

64.    Each Intervenor and Defendants executed and entered into written

employment contracts for a term of one (1) year.

65.    Under their respective contracts, Defendants promised to pay each

Intervenor $3.05 per hour and time and a half for overtime work, payable bi-

weekly.

66.   The said employment contracts contained restrictive, oppressive and unconscionable provisions and language <u>prohibiting Intervenors from being employed after termination</u> by Defendants, as follows:

> "The employee further agree that he/she will not,  without the consent of the Company in writing first obtained, <u>for a period of one year after his/her</u> employment ceases either by resignation, <u>termination,</u> expiration of permit, or other causes, enter the employ of or render services to any person, firm, partnership, or corporation dealing in products or services which compete with any products of or services of L&T or engage in any competing business on his/her own account or become interested therein as director, principal, representative, employee or in any relationship or capacity."  (emphasis added)

A representative copy of the contract form used (Abellanosa's) is attached as **Exhibit "9"** hereto.

67. The existence and application of the said oppressive covenant, coupled with the fact that Defendants, prior to and at the time of termination, had not given any written release/consent from the application of this restrictive provision, caused each Intervenor to reasonably believe thereafter they could not seek employment from other garment related companies and/or that other potential employers would not hire them because of such contract restrictions.

Page 23

Intervenors were thus caused great and severe anxiety, severe mental anguish, suffering and distress , upon being terminated *en masse*.

68.  The said referenced employment contract(s) was a form contract and, a contract of adhesion, prepared and drafted in advance by Defendants and/or their counsels and presented to each Intervenor on a take it or leave it basis without negotiation or opportunity for review or consultation with counsel by Intervenors  and without opportunity for translation from English to a language/dialect spoken and understood by Intervenors, prior to signing.

## E.
### Defendants' Unlawful Termination and Replacement of Intervenors  with Chinese Workers

69.  Intervenors pursuant to their agreements with Defendants,  partly oral and partly written, and the grants of transfer approved by DOL, commenced employment with Defendants on various dates between February 2004 and March 2004.

70. Approximately two (2) months after the last Intervenors began work in March 2004, by letter dated May 12, 2004, (but not given to Intervenors until May 13, 2004) Ma. Luisa Dela Cruz-Ernest, as the  Human Resources Manager

and agent of Defendants, gave each Intervenor a document on L&T Group of Companies, Inc. stationery-letterhead entitled "Notice of Termination" based on the stated ostensible grounds and reasons of "due to the on-going re-engineering and reduction in force due to economic necessity."  Attached as **Exhibit "10"** hereto and incorporated herein by this reference is a representative copy of the said termination notice.

71. Defendants terminated Intervenors *en masse*, without individualized considerations of the legal rights, status, and condition of each Intervenor under their respective contracts, without and in contravention of each Intervenor's rights to due process.  Furthermore, Defendants did not consider or interview each Intervenor about their respective qualifications for other jobs and positions available through L&T, its affiliates and sister companies including Tan Holdings Corporation, and did not in good faith explore other alternatives to firing Intervenors.

**F.**
**L&T's Post-Termination Oppressive,**
**Injurious and Outrageous Conduct**

72.  On information and belief, Defendants, after Intervenors' termination, used other Chinese employees to do packing work previously done by

Intervenors, and/or  hired and brought into the CNMI new Chinese workers from the People's Republic of China to fill various positions in the Defendants' companies, their subsidiaries, and other garment factories affiliated with, owned or controlled by Defendants or their parent company, Tan Holdings.

73.    Shortly after Defendants terminated their employment, each of the Intervenors, in order to support themselves and to mitigate damages resulting from their unlawful termination, started to look for other employment.

74.    On various occasions after their May 13, 2004 termination, certain Intervenors went to the Public Health Liaison Office at the DOL Building in San Antonio to obtain their health clearance certificates then needed by all Intervenors to facilitate and support their employment application(s) with new prospective employers.

75.    The Public Health Liaison Office refused to release to Intervenors their health clearances, explaining that Defendants had instructed their office not to release Intervenors' health clearance to any of the Intervenors.

76.    As a result of L&T's interference with Intervenors' right to have and secure their health certificates subsequent to having terminated Intervenors, by having the Public Health Liaison Office not to release the certificates, Defendants

Page 26

unreasonably interfered with Intervenors' opportunity to obtain other employment and thereby caused Intervenors severe emotional distress.

77.   Since Defendants had initially required and demanded, contrary to law, that Intervenors pay for their health certificates and/or use the health certificates obtained by Intervenors from their prior (now terminated) employers, Defendants' conduct after prematurely and without good cause terminating Intervenors, in refusing to promptly return/release Intervenors' health certificates, was outrageous, especially when considered in light of Defendants' special relationship and higher duty owed to their employee-intervenors as their employer.

**VI.**
**CAUSES OF ACTION**

**First Cause of Action**
**(Defendants Discriminated Against Intervenors by Terminating**
**their Employment  Because of their National Origin)**

78.   The allegations in paragraphs 1 through 77 are re-alleged and incorporated by reference in this First Cause of Action.

79.  Defendants intentionally discriminated against Intervenors in violation of Title VII of the Civil Rights Act of 1964 by intentionally and unlawfully terminating their employment because of their national origin.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

**Second Cause of Action**
**(Defendants Discriminated Against Intervenors by**
**Segregating them from Chinese Employees  and by Denying**
**them Access to Defendants' Meal Plan and Cafeteria, Because**
**of their National Origin)**

80.  The allegations in paragraphs 1 through 79 are re-alleged and incorporated by reference in this Second Cause of Action.

81.  Defendants discriminated against Intervenors in violation of Title VII by segregating them from other employees in their work units and refusing them access to the cafeteria and meal plan provided to Chinese employees, because of their national origin.

**Third Cause of Action**
**(Defendants Discriminated against Intervenors**
**by Providing Filipino Workers with Fewer Overtime Hours**
**than Chinese Workers, Because of their National Origin)**

82.  The allegations in paragraphs 1 through 81 are re-alleged and incorporated by reference in this Third Cause of Action.

83.  Defendants discriminated against Intervenors by providing them with fewer overtime hours than their Chinese employees by limiting Intervenors to a set two (2) hours weekly overtime, while Chinese workers were not so limited as to overtime and routinely worked and were given substantially more overtime hours than Intervenors each week, because of their national origin.

Page 28

1

2

3

**Fourth Cause of Action**
**(Defendants Discriminated Against Intervenors**
**by Denying them Health Benefits Provided to Chinese Workers,**
**Because of their National Origin)**

4    84.    The allegations in paragraphs 1 through 83 are re-alleged and

5    incorporated by reference in this Fourth Cause of Action.

6    85.    Defendants discriminated against Intervenors by denying them

7    employee health benefits provided to Defendants' Chinese employees in the form

8    of payment of the fees for the required physical examinations and health

9
    certificates, because of their national origin.
10

11

12

**Fifth Cause of Action**
**(Supplemental Claim for Defendants' Breach of Contract**
**by Requiring Intervenors to Pay for Costs of Physical Examination**
**and Health Clearance)**

13

14
    86. The allegations in paragraphs 1 through 85 are re-alleged and
15
    incorporated by reference in this Fifth Cause of Action.
16

17    87.  At all relevant times herein, Defendants were required by 3 CMC §

18    4438(b), the employment contract, and the Employer's Non-Resident Worker

19    Agreement, CNMI law and other rules and regulations, to pay the cost of required

20    physical examinations and for health clearance certificates of Intervenors as

21

22    Page 29

nonresident workers.

88. At all relevant times herein, Defendants were required by the Non-Resident Worker Agreement to which each Intervenor  is a third-party beneficiary, to be responsible for payment of each Intervenor's physical examination and health clearance fees which are employer expenses.

89. Each Intervenor was, inter alia, required to either pay or provide for, her  physical examination fees or health clearance fee or both, by Defendants, as set forth in Exhibits "5," "6" and "7" attached hereto.

90. Notwithstanding, Defendants  shifted their burden and obligation to pay or provide for said examinations and fees to Intervenors by requiring that Intervenors pay for or provide said services as a condition to their employment.

91. Defendants' failure and refusal to pay for or provide the physical examination and health clearance fees of Intervenors was in breach of contract and of the specific promise of Defendants to pay said fees as set forth in the Non-Resident Worker Agreement between Defendant and the Director of Labor.

92. Defendants' failure and refusal to pay the physical examination and health clearance certificate fees of Intervenors, was a breach of their respective employment contracts and the Employer's Agreement executed by Defendants

and the Director of Labor of which Intervenors are third-party beneficiaries, and constituted a violation of Section 4438(b) of the NWA.

93.  Defendants are thus liable to Intervenors for the amount or value of the physical examination fees and health clearance fees paid by Intervenors, plus prejudgment interest, and an additional amount as liquidated damages thereon under the NWA.

**Sixth Cause of Action**
**(Defendants' Failure to Pay Full Wages**
**Violated FLSA , MWHA, and the NWA)**

94. The allegations in paragraphs 1 through 93 are re-alleged and incorporated by reference in this Sixth Cause of Action.

95.  As a result of Defendants requiring Intervenors to pay or provide for their respective physical examination and health clearance fees, said Intervenors received or were paid less than the minimum wage and overtime wages prescribed under FLSA, MWHA  and the NWA for the respective pay periods.

96.  Alternatively, Defendants' acts in requiring Intervenors to pay or provide said fees and services constitute and are deemed unauthorized deductions from wages or kickbacks, resulting in each Intervenor being paid less than the minimum wage and applicable overtime wage rate.

97.   Defendant's acts in so failing to pay Intervenors their full minimum and overtime wages, deducting or kicking back the same, was done willfully and intentionally.

**Seventh Cause of Action**
**(Supplemental Claim for Unlawful Termination**
**and Bad Faith Breach of Contract)**

98. The allegations in paragraphs 1 through 97 are re-alleged and incorporated by reference in this Seventh Cause of Action.

99. Defendants' termination of Intervenors was unlawful and a breach of each Intervenor's respective employment contract and the Non-Resident Worker Agreement, because there was no just or valid cause for termination and the terminations were in contravention of the employment contracts and the Department of Labor's rules and regulations regarding termination.

100.  Defendants did not consider or explore other alternatives to the *en masse* termination of Intervenors, such as re-assignment to other work, jobs or positions within the Defendants company or its subsidiaries or its other affiliated, owned or controlled companies, the Defendants' acts and terminations were thus not done in good faith, were pretextual, unlawful, and taken in bad faith.

101. Intervenors are therefore entitled to recover from Defendants as

damages their full contract wages and other lost benefits under their employment contracts had Intervenors been allowed to perform and work through the unexpired term of their respective employment contracts, in an amount to be proven at trial.

### Eighth Cause of Action
**(Supplemental Claims for Breach of Express, Implied-in-Fact and Implied-in-Law Covenants of Good Faith and Fair Dealing)**

102.  The allegations in paragraphs 1 through 101 are re-alleged and incorporated by reference in this Eighth Cause of Action.

103.  Intervenors' employment contracts each contained express, implied-in-fact and implied-in-law covenants of good faith and fair dealing that neither party would do anything to prevent the other from performance under the contract or to enjoy the benefits of the contract.

104.  In terminating Intervenors without good and valid cause as herein described, Defendants acted in bad faith and breached said covenants of good faith and fair dealing of the contracts, with the intent of depriving Intervenors of the benefits that each Intervenors  reasonably expected to receive under their respective employment contracts.

105.  As a direct and proximate result of Defendants' actions and conduct,

Intervenors suffered substantial and severe economic loss in benefits and wages under their contract.

106.  Alternatively, the promises and representations of Defendants and their agents described herein constituted a representation and promise by Defendants that each Intervenor would be employed and given work for one full year, and that thereafter the contracts would be renewed for an additional year.

107.  Defendants, their agents and employees, in representing and telling Intervenors that if Intervenors paid or provided for their medical examination and health certificate fees for the first year, that the Defendants' company, would pay said fees thereafter, beginning with the first renewal of their one-year contract, made said promises and representations knowing or reasonably should have known that Intervenors would rely on said Defendants' promise and assurance that each Intervenor 's contract would be renewed for an additional year upon expiration of the first year's contract.

108.  Intervenors did in fact so act in reliance on Defendants' promises and representations to their detriment and damage.

109.  Defendants' conduct and acts were done intentionally, maliciously, and oppressively and in conscious disregard of Intervenors' rights and constituted

a willful breach of the express and implied covenants of good faith and fair dealing of the contracts, thus, entitling each Intervenor to an award of special, compensatory, consequential, and exemplary damages in an amount to be proven at trial and an equitable and statutory award of attorney's fees.

### Ninth Cause of Action
**(Supplemental Claim for Fraud and Deceit)**

110.   The allegations in paragraphs 1 through 109 are re-alleged and incorporated by reference in this Ninth Cause of Action.

111. At the time Defendants and their agents made said promises, representations and executed the employment contract with Intervenors, they knew or should have reasonably known that because of their  ostensible "on going re-engineering" and "reduction in force due to economic necessity", it could not, or did not, want to or intend to employ Intervenors with full-time employment of 40 hours a week for a basic term of  one-year under an annually renewable contract.

112.   At all pertinent times, and prior to contracting with Intervenors, Defendants were thus aware of their true economic condition and that they would not be able to employ and provide work to Intervenors under their said contracts

for a term of one (1) year as shown in part by **Exhibits "11"** and **"12"** hereto.

113.    Notwithstanding, Defendants, and their agents, with knowledge of their economic and financial condition prior to and/or at the time of contracting, represented and misrepresented to Intervenors that they could reasonably rely on and expect employment for at least one year, with a promise of renewal for an additional second year with Defendants.

114.    The representations and statements made by Defendants to Intervenors, through Defendants' agents, including Lopez, that beginning with Intervenors' second year or renewal contract, Defendants would pay each year thereafter Intervenors' medical examination and health certificate fees was false when made or Defendants and Lopez failed to exercise reasonable care or competence in communicating to Intervenors that the company (Defendants) intended and would pay said fees beginning with their first renewal contract. Defendants and Lopez had the means to know, ought to have known or had the duty to know that their statement and representation was not true, and was a misrepresentation to Intervenors. And Defendants knew or reasonably should have known that Intervenors may or would justifiedly rely on said representations and promises to their detriment.

115. As the result of the said actions and conduct of Defendants, Intervenors were caused and have suffered lost pay and benefits, mental pain and anguish, loss of esteem, physical pain and suffering. The Intervenors therefore seek and are entitled to compensatory and punitive damages, costs and an equitable award of attorney's fees.

116. The foregoing described misrepresentations, deceit, failure to communicate, acts, omissions and conduct of Defendants were deceitful, fraudulent and were done willfully, maliciously, fraudulently, and with reckless disregard for Intervenors' rights and with the intent and purpose that Intervenors would reasonably rely thereon and Intervenors did so reasonably rely thereon to their detriment.

117. As a result of Defendants' misrepresentation, fraud and deceit, each Intervenor suffered damages, including but not limited to lost income, benefits, special and consequential damages in an amount to be proven at trial.

## Tenth Cause of Action
### (Claim for Declaratory Relief for Return Air Fare)

118. The allegations in paragraphs 1 through 117 are re-alleged and incorporated by reference in this Tenth Cause of Action.

119.  Under the contract of each Intervenor, pursuant to the NWA,  and the Employer's Non-Resident Workers Agreement (Exhibit "8"),  Defendants are obligated to provide and pay for the repatriation expenses of each Intervenor to their original point of hire in the Philippines.

120.  Intervenors therefore seek and are entitled to a declaration of the Court, of their rights and entitlement to have Defendants pay and provide for their repatriation expenses to their point of hire in the Philippines.

## PRAYER FOR RELIEF

**WHEREFORE**, Intervenors pray for relief as follows:

1. An award, order and judgment that Defendants' conduct as complained of in the First, Second, Third, and Fourth Causes of Action are violative of Intervenors' rights as protected by Title VII of the Civil Rights Act of 1961 and the Civil Rights Act of 1991, and

a. Order Defendants to make the Intervenors whole by providing appropriate lost earnings and benefits, with prejudgment interest, in an amount to be determine at trial;

b.  Award the Intervenors reasonable attorney's fees and costs, including

Page -38-

the fee and costs of experts, if any, incurred in prosecuting this action;

c.    Award the Intervenors compensatory and punitive damages to be determined by the jury at the time of trial;

2.  An order and award of compensatory damages and reimbursements of fees paid or the reasonable costs of said physical examination and health certificate fees, an equal amount as liquidated damages, prejudgment interest, attorney's fees and costs,  under the Fifth Cause of Action;

3.  An award of compensatory damages, plus an equal amount as liquidated damages, prejudgment interest, costs and reasonable attorney's fees under the Sixth Cause of Action;

4.  An award of compensatory damages for lost wages and benefits through the unexpired term of each Intervenor's respective employment contract, in an amount to be proven at trial, plus an equal amount as liquidated damages, costs and reasonable attorney's fees, and prejudgment interest under the Seventh Cause of  Action;

5.  An award of special, compensatory, consequential, and exemplary damages in an amount to be proven at trial, an equal amount as liquidated damages, prejudgment interest, costs, and an equitable award of reasonable

attorney's fees under the Eighth Cause of Action;

6.   An award for lost wages, benefits, special, consequential, punitive damages, and attorney's fees and costs in an amount to be proven at trial under the Ninth Cause of Action;

7. For a declaration that Defendants are obligated to pay for the repatriation expenses and costs of the repatriation of Intervenors  under the Tenth Cause of Action.

8.   For temporary work authorization during the pendency of this matter;

9.  For transfer relief; and

10.  Such other and further relief as may be deemed proper at law and in equity.

## DEMAND FOR JURY TRIAL

The Intervenors request a jury trial on all questions of fact and claims raised in this Complaint.

**SIGNED** this 23rd day of January,  2008.

/s/_____
**JOE HILL**
Attorney for Plaintiffs-Intervenors